IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CAROL BRAND,

      Plaintiff,

v.                                                                                                                      CV 20-0329 JHR

KILOLO KIJAKAZI, Acting Commissioner,
Social Security Administration,[1]

      Defendant.

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Carol Brand's Motion to Reverse and/or Remand [Doc. 19]. The Commissioner filed a response and Ms. Brand replied, completing the briefing on May 20, 2021. [Docs. 23, 26]. Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties have consented to the undersigned Magistrate Judge to dispose of Ms. Brand's appeal and enter Final Judgment. [Docs. 4, 5, 6]. Having reviewed the parties' briefs and the administrative record (*AR*), the Court **denies** Ms. Brand's Motion.

### I.    INTRODUCTION

This Court's institutional role when reviewing a decision of the Commissioner is limited to assessing whether errors of law were committed and if the decision is supported by substantial evidence. The Court is not permitted to reweigh evidence that the Commissioner's administrative law judge ("ALJ") has assessed and rejected if the ALJ's analysis is supported by substantial evidence. Substantial evidence is not a high standard. It is more than a scintilla and less than a preponderance. It can only be overcome if there is evidence that overwhelms the ALJ's analysis.

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, is substituted for former Commissioner Andrew Saul as the Defendant in this suit.

Thus, where, as here, the Commissioner complies with the relevant law and weighs evidence unfavorably to a claimant, the Court exceeds its jurisdictional bounds by speculating that evidence should have been weighed differently. While the Court sympathizes with Ms. Brand, without overwhelming evidence to the contrary the ALJ's thorough analysis in this case precludes reversal on the evidentiary grounds she raises, and affirmance is required.

## II.     PROCEDURAL HISTORY

Ms. Brand filed an application with the Social Security Administration for disability insurance benefits under Title II of the Social Security Act on December 11, 2014. *AR* at 158-159.[2] She alleged a disability onset date of June 14, 2011, the day she suffered a cerebral venous thrombosis. *AR* at 158; [Doc. 19, p. 1]. Ms. Brand most recently worked as a receptionist in 2006, so her date last insured was December 31, 2011. *AR* at 49, 72. She alleged the inability to work after her cerebral venous thrombosis because of short-term memory loss and constant headaches. *AR* at 72, 680 ("I had practically a constant headache the first year until the blood clots dissolved.").

The Administration denied Ms. Brand's claim initially and upon reconsideration, and she requested a *de novo* hearing before an administrative law judge. *AR* at 72-104. ALJ Ann Farris held an evidentiary hearing on December 14, 2016. *AR* at 42-71. On March 31, 2017, she issued an unfavorable decision, finding that Ms. Brand "was not under a disability, as defined in the Social Security Act, at any time from June 14, 2011, the alleged onset date, through December 31, 2011, the date last insured[.]" *AR* at 30. In reaching this finding the ALJ found that Ms. Brand did not have a severe impairment at step two of the sequential evaluation process. *See AR* at 26-30. Ms. Brand filed a "Request for Review of Hearing Decision/Order" on May 5, 2019. *AR* at 153. However, the Appeals Council denied review on October 31, 2017, rendering ALJ Farris's decision the final decision of the Commissioner. *See AR* at 1-7; *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

---

[2] Documents 14-1 through 14-14 comprise the sealed Certified Administrative Record ("*AR*"). The Court cites the Record's internal pagination, rather than the CM/ECF document number and page.

Ms. Brand appealed ALJ Farris's decision to this Court on January 16, 2018. *AR* at 727-731. Acting on the Proposed Findings and Recommendation of Magistrate Judge Laura Fashing, Chief District Judge William Johnson reversed ALJ Farris's findings and remanded the case for further proceedings by the Commissioner on March 26, 2019. *See AR* at 732-746. The Appeals Council subsequently remanded the case "to an Administrative Law Judge for further proceedings consistent with the order of the court" on May 2, 2019. *AR* at 749.

A second *de novo* hearing was held before ALJ Eric Weiss ("the ALJ") on December 17, 2019. *See AR* at 673-702. Ultimately, the ALJ issued an unfavorable decision on February 7, 2020. *AR* at 611-644. The Appeals Council did not assume jurisdiction over the case, and so ALJ Weiss' decision became the final decision of the Commissioner. *See* 20 C.F.R. § 404.984(d). This Court now has jurisdiction to review the decision pursuant to 42 U.S.C. § 405(g) and 20 C.F.R. § 422.210(a).

### III.    THE COMMISSIONER'S FINAL DECISION

A claimant seeking disability benefits must establish that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. § 404.1520(a)(4).[3]

At step one of the sequential evaluation process the ALJ found that Ms. Brand has not engaged in substantial gainful activity during the period from her alleged onset date of June 14, 2011 through her date last insured of December 21, 2011. *AR* at 617. At step two, he determined that Ms. Brand had the severe impairment of "cerebral venous sinus thrombosis" during the relevant time period. *AR* at 617. At step three, the ALJ concluded that Ms. Brand's impairments,

---

[3] The Tenth Circuit summarized these steps in *Allman v. Colvin*, 813 F.3d 1326, 1333 n.1 (10th Cir. 2016).

3

individually and in combination, do not meet or medically equal the regulatory "listings." *AR* at 619-621. Ms. Brand does not challenge the ALJ's conclusions through step three. [*See* Doc. 19].

When a claimant does not meet a listed impairment, the ALJ must determine her residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). RFC is a multidimensional description of the work-related abilities a plaintiff retains in spite of his impairments. *See* 20 C.F.R. § 404.1545(a)(1). "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." SSR 96-8p, 1996 WL 374184, at *1. In this case, ALJ Weiss determined that Ms. Brand retained the following RFC from her alleged onset date through her date last insured:

> to perform medium work as defined in 20 CFR 404.1567(c), with the following specific limitations: [Ms. Brand] is able to lift, carry, push, and pull up to 50 pounds occasionally and up to 25 pounds frequently. She is able to sit, stand, or walk up to six hours each during an eight-hour workday, with normally scheduled breaks. In addition, [Ms. Brand] must avoid climbing ladders, ropes and scaffolds and she must avoid more than occasional exposure to unprotected heights and dangerous moving machinery. Further, [she] is able to understand, remember, and carry out simple instructions and to make commensurate work related decisions in a work setting with few changes. [Ms. Brand] is able to interact occasionally with supervisors, co-workers, and the public. Finally, [she] is able to maintain concentration, persistence and pace for two hours at a time during the workday, with normally scheduled breaks.

*AR* at 621. In support of this RFC, the ALJ prepared fifteen pages of reasoning. *See AR* at 621-635. Pertinent here, the ALJ summarized the medical evidence that was available at the time of Ms. Brand's thrombosis showing little work-related limitations and contrasted that evidence with four physicians' present opinions that Ms. Brand must have experienced limitations during the relevant time period. *Id.*

Employing Ms. Brand's RFC at steps four and five, and relying on the vocational expert's testimony, the ALJ determined that Ms. Brand is unable to perform her past relevant work. *AR* at 636. However, the ALJ found that there were jobs that existed in significant numbers in the

national economy that Ms. Brand could have performed despite her limitations. *AR* at 636. Accordingly, the ALJ determined that Ms. Brand is not disabled as defined in the Social Security Act and denied her Title II benefits for the period from June 14, 2011 through December 31, 2011 – her date last insured. *AR* at 637.

## IV.    STANDARD OF REVIEW

This Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting Mays v. Colvin, 739 F.3d 569, 571 (10th Cir. 2014)). The Court must "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation omitted). The Court reviews only the sufficiency of the evidence, not its weight. *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[,] [and] requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084 (quotation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record[.]" *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

## V.    ISSUES

1.    Did the ALJ fail to properly weigh Dr. Montoya's opinions when he found them to be speculative because Dr. Montoya limited her conclusions to Ms. Brand's functioning in 2017, did not review Ms. Brand's historical medical records and because the ALJ contrasted them with her then-current records indicating Ms. Brand's condition had resolved?

2.      Did the ALJ fail to properly weigh Dr. Baum's opinions when he found that they: were made many years after the relevant period; relied on Dr. Montoya's findings; noted that there was nothing in Ms. Brand's medical records to support his limitations, and; were admittedly speculative?

3.      Did the ALJ fail to properly weigh Dr. McDade or Sancehz' opinions when he noted that Dr. McDade's treatment notes do not support her opinions in light of Ms. Brand's self-reported daily activities?

## VI. ANALYSIS

Under law, when formulating a claimant's residual functional capacity "[i]t is the ALJ's duty to give consideration to all the medical opinions in the record. . . . He must also discuss the weight he assigns to such opinions." *Keyes-Zachary*, 695 F.3d at 1161 (citations omitted). There are six regulatory factors an ALJ should consider when weighing a medical opinion. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). As summarized by the Tenth Circuit:

> [w]hen evaluating the opinion of any medical source, an ALJ must consider:
>
> (1) the length of the treatment relationship and the frequency of examination;
> (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
> (3) the degree to which the physician's opinion is supported by relevant evidence;
> (4) consistency between the opinion and the record as a whole;
> (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
> (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Kellams v. Berryhill*, 696 F. App'x 909, 917 (10th Cir. 2017) (unpublished) (citing *Goatcher v. US. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995); 20 C.F.R. §§ 404.1527(c), 416.927(c)).

Simply put, so long as the ALJ applies some of the relevant factors affirmance is often required. This is because an ALJ is "not required' to apply expressly each of the six relevant factors in deciding what weight to give a medical opinion.'" *Razo v. Colvin*, 663 F. App'x 710, 715 (10th Cir. 2016) (unpublished) (quoting *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007)). Similarly, "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). This is because "[t]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Id.* (quoting *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)).

As compared with agency doctors who only review a claimant's medical records, "[e]xamining medical-source opinions" are "given particular consideration." *Ringgold v. Colvin*, 644 F. App'x 841, 843 (10th Cir. 2016) (quoting *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012)). Therefore, such an opinion "may be dismissed or discounted, of course, but . . . the ALJ must provide specific, legitimate reasons for rejecting it." *Id.* The same is equally if not more true of treating physicians. *See, e.g.*, *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).

**A) The ALJ weighed Dr. Montoya's opinions under the regulatory factors and his reasoning is supported by substantial evidence.**

Ms. Brand argues that the ALJ failed to properly consider Dr. Montoya's opinions. [Doc. 19, p. 22]. She says that the ALJ's reasoning – that the opinions were formed long after her date last insured, did not review her medical records, and other factors could have caused Ms. Brand's then-current symptoms – is insufficient. [*Id.*]. The Court disagrees.

As noted above, there are six regulatory factors that an ALJ will weigh a medical opinion against. *See Kellams*, 696 F. App'x at 917. Here, the ALJ reasoned:

> I note that Dr. Montoya specifically limited her examination and conclusions to a determination of the claimant's then-current functioning – i.e., her functional abilities and limitations as of June 2017, six years after the cerebrovascular event and long after the claimant's insured status for a period of disability and disability benefits had expired. Dr. Montoya also specifically stated that she had not reviewed any of the claimant's historical treatment records. However, she later speculated that the claimant had experienced deficits since the blood clots in her brain, but provided no basis for this speculation and no description of the degree of functional deficit the claimant may have experienced in the latter half of 2011, the relevant time frame for this claim. I note again that the contemporaneous treatment records from that period never indicated either complaints of or observations of cognitive deficits; to the contrary, records during that time indicate that the claimant's brain condition had resolved. Since then, the claimant has experienced several injuries affecting her head and neck, and she was taking an herbal supplement that her doctor described as toxic. The claimant also had untreated obstructive sleep apnea, for which she ultimately obtained evaluation and treatment, and she reported having significant problems with sleep deprivation due to postmenopausal symptoms long after the June 2011. Any of these events may have had an independent intervening effect on the claimant's functioning, contributing to a decline in cognitive abilities. The first reports of memory problems were not until 2014. Dr. Montoya was unfamiliar with the claimant and had no historical treatment notes. Her one-time examination took place long after the relevant period and no objective basis was given for the speculation that the claimant's functional deficits were present – let alone present at the same level – six years earlier. For all of these reasons, I give Dr. Montoya's opinions limited weight as to the relevant period.

*AR* at 630. Thus, the ALJ's reasoning touched on the treatment relationship between Ms. Brand and Dr. Montoya, the degree to which Dr. Montoya's opinion was supported by the relevant evidence, the consistency of Dr. Montoya's opinion with the record as a whole, and other factors that detracted from the opinion. Nothing more is required under Tenth Circuit law, and Ms. Brand's request for this Court to re-weigh the evidence is improper. *See Lax*, 489 F.3d at 1084.

Ms. Brand's best argument is that some of the ALJ's reasoning is speculative. However, the Court may ignore faulty reasoning where the ALJ's analysis as a whole is supported by substantial evidence. *See, e.g., Lax*, 489 F.3d at 1088; *Bainbridge v. Colvin*, 618 F. App'x 384, 390 (10th Cir. 2015) (unpublished) ("[E]ven if this reason was improper, the other reasons the ALJ gave were more than sufficient for rejecting Dr. Bates's opinion."); *Bills v. Comm'r, SSA*, 748 F.

8

App'x 835, 840 (10th Cir. 2018) (unpublished) ("We agree that this was not a good reason for discounting Dr. Mitchell's opinion regarding Ms. Bills's ability to stand and walk. This misstep, however, is not dispositive because substantial evidence still supports the ALJ's rejection of Dr. Mitchell's opinion of Ms. Bills's standing and walking abilities."). Therefore, the Court affirms to the extent that Ms. Brand claims error in the weight assigned to Dr. Montoya's opinions.

### B) The ALJ weighed Dr. Baum's opinions under the regulatory factors and his reasoning is supported by substantial evidence.

As with Dr. Montoya, Ms. Brand argues that the ALJ failed to properly consider Dr. Baum's opinions. [Doc. 19, p. 24]. Specifically, she claims that her testimony and Dr. Baum's speculation that her physicians were not doing their jobs by documenting her symptoms at the time outweighs the ALJ's reasoning. [*Id.*]. The Court disagrees.

With respect to Dr. Baum, the ALJ reasoned:

> I give limited weight to Dr. Baum's opinion with respect to the relevant period from June to December 2011. Dr. Baum's evaluation was performed many years later and relied on Dr. Montoya's findings, which were also made many years after the end of the relevant period. Dr. Baum neither specified the period for which he felt his opinions applied, although his findings and conclusions were framed in present-tense terms, implying that he was addressing the claimant's then-current functioning. I also give limited weight to Dr. Baum's opinions expressed during his hearing testimony. Dr. Baum admitted that there is nothing in the medical records during the relevant period that supports his assessment, although he speculated that her problems likely began with the brain thromboses. He also testified that her conditions could have worsened over time and that he was assuming that the claimant's earlier medical providers were not doing their job. He also testified that even if the onset of the claimant's condition took place in 2011, it is possible that she did not have any symptoms until later on (Hearing Recording at 12:18:23 to 12:38:31). Thus, Dr. Baum's opinions are admittedly speculative and of very limited relevance to the claimant's functional abilities and limitations during the period at issue; they are entitled to limited weight.

*AR* at 634. Thus, the ALJ's analysis touched on the supportability of Dr. Baum's opinions, inconsistency with the medical records at the time, and the overall speculative nature of his testimony. Ms. Brand's request for this Court to re-weigh Dr. Baum's opinion and assign it greater weight is, again, improper under binding case law. *See Lax*, 489 F.3d at 1084.

9

Finally, Ms. Brand argues that the ALJ ignored Dr. Baum's expertise. [Doc. 19, p. 24]. But, again, this omission does not help her because an ALJ does not have to address all relevant factors, *Oldham*, 509 F.3d at 1258, and this Court may permissibly ignore an ALJ's faulty reasoning when conducting its review if the Commissioner's analysis is otherwise supported in its totality. *See, e.g., Lax*, 489 F.3d at 1088; *Bainbridge*, 618 F. App'x at 390; *Bills*, 748 F. App'x at 840. As such, the Court is unpersuaded that the ALJ's treatment of Dr. Baum's opinions merits reversal.

### C) The ALJ weighed Drs. McDade and Sanchez' opinions under the regulatory factors and his reasoning is supported by substantial evidence.

Ms. Brand combines her argument as to Drs. McDade and Sanchez, likely because the ALJ treated them similarly given their status as treating physicians. *Compare AR* at 632-633 *with* [Doc. 19, p. 26]. Again, she argues that the ALJ failed to properly consider these two doctors. [Doc. 19, pp. 26-27]. The Court is, again, unconvinced. The ALJ reasoned:

> I find that Dr. Sanchez falls within the meaning of "treating physician". I find that his opinion is not entitled to controlling weight because the opinions that the claimant was markedly and extremely impaired in work-related mental functioning are not supported by the medical evidence. The claimant experienced an acute event consisting of blood clots in her brain. While this was undoubtedly a very frightening event, the claimant recovered very quickly and the objective medical evidence does not reflect ongoing complaints of cognitive or memory difficulties. The evidence of record, including Dr. Sanchez' own treatment notes, does not support Dr. Sanchez' opinions. Dr. Sanchez did not identify any specific clinical findings that would support such extensive limitations, either in nature or in severity.
>
> Similarly, with respect to Dr. McDade's opinions (Exhibit 17F), the objective medical evidence, including Dr. McDade's own treatment notes, does not support either the extent or the nature of the limitations with respect to the relevant period in 2011. The claimant's mild-to-moderate degenerative disc disease of the cervical spine was not diagnosed until years after the relevant period and I note that the claimant experienced several injuries affecting her back and neck between that time and the date of the cervical spine diagnosis, as detailed above. Dr. McDade's own mental status evaluations of the claimant, performed years after the relevant time frame, did not reflect the nature or extent of mental limitations proposed by either Dr. McDade or Dr. Sanchez, although the claimant did make one complaint of

>short-term memory loss on November 12, 2016, five years after the relevant period and at about the same time as she was requesting Dr. McDade to complete paperwork to support her disability claim. The claimant complained of arm pain and numbness, also after the relevant period, but continued to engage in regular and frequent target shooting with her gun club, as well as lifting 30-pound bags of dog food and engaging in many other activities.
>
>In addition to the lack of objective medical support for Dr. Sanchez' and Dr. McDade's opinions, the claimant's own self-reports and her husband's third-party reports belie the extreme limitations described in these opinions. The claimant continued to do regular and frequent volunteer work, to engage in all types of self-care and household tasks on a daily basis, and independently, and the claimant engaged in recreational activities that were as varied as watching television for two hours at a time and going shooting biweekly. These activities are quite inconsistent with marked to extreme limitations in following instructions and making judgments. In addition, Dr. Sanchez' treatment notes reflect no ongoing complaints or treatment for any mental or cognitive impairment during the relevant period or even well after the end of 2011. The treatment notes contain no reports of, or recommended treatment for, memory loss or decreased cognitive functioning from 2011 until the neuropsychological evaluation in 2017. In the interim, the claimant engaged in self-care, household chores, cared for three dogs, volunteered at several locations, attended church, engaged in weekly or biweekly shooting practice. She could perform household repairs, drove a significant distance several times per week to do shopping, and did not complain to her medical providers about having difficulty with any of these activities from the standpoint of mental functioning - nor did she seek mental health care. She underwent no testing for neurocognitive issues until six years after the thromboses occurred. For all of these reasons, I give Dr. Sanchez' and Dr. McDade's opinions little weight.

*AR* at 632-633. In other words, the ALJ addressed these doctors' treatment relationship with Ms. Brand, and the consistency of their opinions with the relevant medical records, as well as Ms. Brand's admitted daily activities. Nothing more was required, and Ms. Brand's citation to some mental status examinations showing "abnormal" psychological presentation at the time, *see* [Doc. 26, pp. 3-4], does not overwhelm the evidence the ALJ relied on.

### VII. CONCLUSION AND ORDER

Again, the Court sympathizes with Ms. Brand. It seems odd that four doctors could agree with her testimony and that testimony still be rejected by an administrative agency. But the ALJ

11

in this case weighed the evidence under the regulatory factors. Ms. Brand's arguments to the contrary ask the Court to re-weigh the relevant physicians' opinions, which the Court cannot do.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Reverse and/or Remand [Doc. 19] is **denied**.

**IT IS FURTHER ORDERED** that a Final Order pursuant to Rule 58 of the Federal Rules of Civil Procedure be entered affirming the decision of the Acting Commissioner and dismissing this action with prejudice.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent